Filed 12/8/15  P. v. Nicholas CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B260818 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA062843) |
| v. | |
| ATHMANI NICHOLAS, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County. James B. Pierce, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Blythe J. Leszkay, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury convicted defendant and appellant Athmani Nicholas of three counts of second degree robbery.  Defendant appeals, contending the trial court abused its discretion in admitting hearsay statements as prior inconsistent statements, and that the record lacks substantial evidence supporting his guilt.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Around 11:30 a.m. on July 11, 2004, Janet Covarrubias was at work at a Del Taco restaurant in Signal Hill.  Two cooks, Lucia and Lupe, as well as the manager, Imelda Delarosa, were also on duty.  All four employees were in the area behind the front counter for employees only.  At that time, there were only two customers in the restaurant, Doug Sambrano and Diana Medrano, eating together at one of the tables.

Mr. Sambrano noticed, through a window facing the parking lot, that several young African-American males were walking quickly and purposefully toward the restaurant.  It seemed unusual and he was a little concerned.

Ms. Covarrubias was near the front counter when three African-American males in their 20's came in together through the front doors of the restaurant.  She asked them if they wanted to place an order.  They told her they were not yet ready.  When Ms. Covarrubias asked a few moments later if they were ready to order, one of the three males said "let's do this."  Two of them jumped over the counter; one was taller and darker skinned, and the other was slimmer in build and lighter skinned.  Ms. Covarrubias noticed the taller one had a gun.  Lucia also saw them jump over the counter.  She thought two of them were armed.  Lupe started toward the back of the kitchen area and the slimmer male ran back to stop her.  He ordered Lucia and Lupe to the ground.  The taller one told Ms. Delarosa to take him to the safe.  They went to the safe, and the taller one told Ms. Delarosa she only had 10 seconds.  She opened the safe and he grabbed the money, less than $100.

The third African-American male did not jump over the counter but went over to Mr. Sambrano, who was still seated at a table.  Ms. Medrano had gone to the bathroom

2

just before the three males entered.  The third male ordered Mr. Sambrano to the ground, put a gun to the back of his head, went through his pockets and took his wallet.

A bell went off indicating that a car had pulled into the drive-through.  The slimmer male tried to yank the headset off of Ms. Covarrubias's head, presumably to prevent her from talking to the driver of the car.  Ms. Covarrubias tried to pull the headset off but it got tangled, and she and the slimmer male continued to struggle with it.  The taller male said "get to the ground, bitch" and hit her on the back of the head with a gun.  Ms. Covarrubias fell to the ground, near the counter.  The taller male and the slimmer male then jumped back over the counter, stepping on Ms. Covarrubias's back in the process.  All three males then left quickly through the front doors.

From inside the bathroom, Ms. Medrano heard some sort of "commotion."  As she came out of the bathroom, she paused near the door.  She saw, in profile, an African-American male leaving out the front doors.  She noticed he was holding a gun.  The police arrived about two minutes after the three males left.

Detective Steven Owens of the Signal Hill Police Department assisted in the investigation of the robbery.  Detective Owens explained that by September 2014, they had identified three individuals as suspects:  defendant, an individual named Antoine Marks, and an individual named Kevin Barnes.  Detective Owens prepared three different six-pack photographic lineups, each containing one photograph of one of the suspects.  Defendant's photograph was number 3 in "lineup A."  Mr. Marks's photograph was number 4 in "lineup B" and Mr. Barnes's photograph was placed in "lineup C."

Ms. Covarrubias identified defendant and Mr. Marks as the African-American males who jumped over the counter.  She had gotten a good look at them and was able to pick them out "right away" after being shown the pictures.  She was unable to identify the third male who had ordered Mr. Sambrano to the ground.  Detective Owens said that Ms. Covarrubias looked at lineup A and within a "few seconds" pointed to defendant's photograph as one of the robbers.  She added that she thought defendant might have been the one who went after Lupe when she headed to the back of the kitchen.  Ms. Medrano also identified defendant when she was shown the six-pack photographic lineups.  She

3

said defendant was the individual she saw leaving the restaurant. Lucia, Ms. Delarosa, and Mr. Sambrano were unable to positively identify defendant from the photographic lineups.

Defendant absconded after the robbery and was not arrested until about 10 years later. He was charged by information with three counts of second degree robbery (Pen. Code, § 211). Count 1 related to Ms. Delarosa, count 2 to Ms. Covarrubias, and count 3 to Mr. Sambrano. It was specially alleged a principal was armed with a firearm in the commission of each offense. (§ 12022, subd. (a)(1).) Defendant pled not guilty and denied the special allegation.

The case proceeded to jury trial in December 2014. Before opening statements, the court discussed various matters with counsel outside the presence of the jury. The prosecutor raised the fact she intended to call Mr. Marks to testify and that he was presently serving a sentence for the robberies in this case. The court indicated the relevant jury instruction would be provided regarding the testimony of an in-custody witness. The court also ordered counsel to make no references to the sentence Mr. Marks received, and was presently serving, for the robberies. The prosecutor then raised the prospect of using the prior statements of Mr. Marks, and the testimony of Detective Donald Collier, in the event Mr. Marks testified inconsistently. The court ruled that any such prior statements would not be admissible unless Mr. Marks gave inconsistent testimony in court. The court asked the prosecutor if she had spoken to Mr. Marks and whether she anticipated he would deviate from his prior statements. She said she had not yet spoken to him, but that she was expecting him to testify inconsistently. The court reiterated that no prior statements would come in unless Mr. Marks testified inconsistently. The court admonished counsel that before using any recordings of prior statements, the prior statements would have to be sanitized for any gang references.

The defense raised no argument or objection to the court's rulings regarding the testimony of Mr. Marks. Defense counsel did inquire about whether the prosecution planned to elicit testimony that defendant absconded from the area after the robbery. The prosecutor stated she was not planning on doing so, or making any reference to the fact

4

that defendant was only recently detained in South Carolina. The court ordered the prosecutor to instruct her witnesses not to go into those issues.

Testimony began with the employees and customers at the Del Taco on July 11, 2004. In addition to attesting to the facts of the incident, both Ms. Covarrubias and Ms. Medrano attested to their positive identifications of defendant in the photographic lineups they were shown by detectives in September 2004. Ms. Covarrubias could not recognize defendant in court, 10 years later. Ms. Medrano could not recall whether she told the detectives back in September 2004 that the man she saw leaving the restaurant, whom she identified as defendant, was holding a gun. Ms. Delarosa was also unable to identify defendant in court.

Mr. Marks was called by the prosecution. Before the start of questioning, the court instructed the jury it was required to judge Mr. Marks's credibility like any other witness and not use his custody status for or against him.

Mr. Marks testified he had known defendant since they were in middle school. They lived next to each other on the same street in Long Beach. Mr. Marks identified defendant in court. He also conceded he committed the robbery at the Del Taco restaurant in Signal Hill in July 2004. But when the prosecutor asked specific questions about the robbery, Mr. Marks answered each question with "[d]on't recall."

After defendant answered eleven questions about the incident with only "[d]on't recall," defense counsel objected to the entire line of questioning as leading. The court overruled the defense objection, explaining it was going to allow the prosecution to treat Mr. Marks as a hostile witness. Mr. Marks continued to answer all questions by the prosecutor about the incident with "[d]on't recall."

When asked if he remembered being interviewed by Detective Kenneth Bragole, shortly after the robbery, he said he recalled speaking with him earlier that day before taking the stand to testify, but not after the 2004 incident. Mr. Marks responded "nope" when asked if he was concerned about being labeled a snitch if he testified about the incident. When shown a photograph of defendant, Mr. Marks said "it favors him."

5

Mr. Marks otherwise did not answer any questions about the 2004 robbery, but simply repeated the answer "[d]on't recall."

The prosecutor asked to play the video of Mr. Marks's September 2004 interview. The court overruled defendant's objections that the recorded interview was hearsay and improper impeachment, and allowed the video to be played for the jury. Mr. Marks confirmed that he was depicted in the video, but continued to claim he did not recognize Detective Bragole from the interview, only from speaking to him earlier that morning. The defense did not cross-examine Mr. Marks. Mr. Marks was ordered held in local custody in case further testimony became necessary.

Detective Bragole of the Signal Hill Police Department testified that he interviewed Mr. Marks in September 2004 as one of the suspects in the July 2004 robbery and was the officer in the video played for the jury. On cross-examination, Detective Bragole conceded there were no fingerprints or physical evidence from the scene that were linked to defendant.

In the videotape played for the jury, Mr. Marks said that on the morning of July 11, 2004, "John" and Mr. Barnes came to his house and picked him up. They then drove over to pick up defendant. Defendant had a handgun, and John gave Mr. Marks a "plastic" gun to use. He said it was John's idea to rob the Del Taco. After they drove to the Del Taco in Signal Hill, Mr. Marks, defendant and Mr. Barnes got out to go inside. John stayed in the car. Mr. Marks said they went in, jumped over the counter, and ordered one of the employees to give them the money in the safe. One of the female employees put the money in a paper bag and gave it to them. He denied hurting anyone. Mr. Marks said Mr. Barnes took a wallet from one of the customers. The whole thing happened very quickly and then they left. They drove to a gas station, an Automated Teller Machine (ATM) and a 7-Eleven store and used some of the cards from the stolen wallet.

The prosecution called Detective Collier of the Long Beach Police Department. He said he initially interviewed Mr. Marks in September 2004 about the Del Taco robbery. Defendant again raised an objection that any testimony about a prior statement

6

was improper hearsay.  The court overruled the objection, explaining the testimony would be allowed as a prior inconsistent statement of Mr. Marks.

Detective Collier said that when he interviewed Mr. Marks, he admitted to participating in the July 11, 2004 robbery.  He told Detective Collier that on the morning of the robbery, "John Clarke" and "Kevin Barnes" picked him up.  They then drove over to pick up defendant.  They went to the Del Taco in Signal Hill and drove around it a couple of times, before parking "away" from it a bit.  Mr. Marks, Mr. Barnes and defendant went inside the Del Taco.  Mr. Marks said he was carrying a "machine-gun" type of gun and defendant had a handgun.  They went inside the restaurant and demanded cash which was given to them in a paper bag.  Mr. Barnes took a wallet from a customer.  The group then left and drove to a gas station, an ATM and a 7-Eleven store.  Detective Collier said he shared the information he obtained with Detective Bragole, who then used that information to conduct his interview with Mr. Marks about the incident.

Defendant was found guilty as charged.  The court sentenced defendant to 15 years in state prison.

This appeal followed.

## DISCUSSION

### 1. Prior Inconsistent Statements

Defendant contends the court erred in admitting the September 2004 videotaped interview of Mr. Marks by Detective Bragole, as well as the testimony of Detective Collier regarding Mr. Marks's September 2004 in-custody statement to him.  Defendant argues neither statement qualified under the prior inconsistent statement exception to the hearsay rule, because Mr. Marks's trial testimony was not inconsistent.  Defendant contends Mr. Marks's trial testimony only reflected that he could not recall the specifics of the robbery which was reasonable given that the trial took place 10 years after the robbery.  "We review the trial court's rulings on the admission of evidence for abuse of discretion." (*People v. Cowan* (2010) 50 Cal.4th 401, 462 (*Cowan*).)  We conclude the court did not abuse its discretion.

7

"A statement by a witness that is inconsistent with his or her trial testimony is admissible to establish the truth of the matter asserted in the statement under the conditions set forth in Evidence Code sections 1235 and 770.[1] The 'fundamental requirement' of section 1235 is that the statement in fact be *inconsistent* with the witness's trial testimony. [Citation.] Normally, the testimony of a witness that he or she does not remember an event is not inconsistent with that witness's prior statement describing the event. [Citation.] However, courts do not apply this rule mechanically. 'Inconsistency in effect, rather than contradiction in express terms, is the test for admitting a witness' prior statement [citation], and the same principle governs the case of the forgetful witness.' [Citation.] When a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied. [Citation.] As long as there is a reasonable basis in the record for concluding that the witness's 'I don't remember' statements are evasive and untruthful, admission of his or her prior statements is proper." (*People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220.)

The question of evasiveness ordinarily arises when, as here, a witness claims a lack of memory about the subject of the questioning. (*Cowan*, *supra*, 50 Cal.4th at p. 463.) The trial court is in the best position to assess the credibility of a witness's claimed lack of memory because it can observe the witness's demeanor. (See, e.g., *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 78 [rejecting defense argument it was error to

---

[1]    "Evidence Code section 1235 provides . . . : 'Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770.'
    "Evidence Code section 770 provides . . . : 'Unless the interests of justice otherwise require, extrinsic evidence of a statement made by a witness that is inconsistent with any part of his testimony at the hearing shall be excluded unless:  [¶]  (a) The witness was so examined while testifying as to give him an opportunity to explain or to deny the statement; or  [¶]  (b) The witness has not been excused from giving further testimony in the action.' "

admit the prior statement of an accomplice who claimed at trial not to recall the incident or even her own testimony from her trial at which she was convicted as an accessory].)

Here, Mr. Marks answered the prosecutor's first few questions, confirming he had known defendant since middle school, they had lived near each other on the same street, and identified defendant in court. Mr. Marks also conceded he had committed the robbery at the Del Taco in July 2004. However, his testimony abruptly changed as soon as the prosecutor asked her first question regarding the specifics of the robbery. The first question she asked after Mr. Marks confirmed that he had committed the robbery 10 years earlier, was "[w]hat time of day was that committed?" Mr. Marks responded "[d]on't recall."

Thereafter, no matter the question, if it pertained to the robbery, he asserted nothing but "[d]on't recall." A reasonable implication from his identical responses, delivered in an apparently staccato fashion, is that he was being deliberately evasive. The record plainly supports the trial court's ruling allowing the prosecutor to treat Mr. Marks as a hostile witness in a further attempt to elicit his testimony with leading questions. Mr. Marks's evasive testimony continued, and only then did the court allow the prosecutor to introduce his prior videotaped interview and the testimony of Detective Collier about his prior inconsistent statements.

Defendant's argument the record does not support a finding of deliberate evasion, because it was reasonable for Mr. Marks to not recall the specifics of the robbery ten years later, is not persuasive. While some hesitation or inability to recall the exact time of day or some detail of the robbery may have been reasonable, Mr. Marks did not so testify. Rather, without any apparent hesitation, he simply responded "[d]on't recall" to all questions about the robbery. Mr. Marks's claimed inability to recall whether defendant, his childhood friend, participated with him in the robbery was implausible, and the trial court was in the best position to judge Mr. Marks's demeanor while so testifying.

We conclude the record contains ample evidence supporting the court's determination that Mr. Marks's professed lack of recall amounted to deliberate evasion,

and its admission of his prior inconsistent statements as impeachment. (*People v. Ervin* (2000) 22 Cal.4th 48, 84-85 [affirming court's admission of witness's prior statement as impeachment and court's implied finding that the witness's claimed memory loss was deliberately evasive where she said she could not recall any of her preliminary hearing testimony, any of the events surrounding the offenses, or even identify the defendant or his accomplice despite the fact she acknowledged him as the father of her child].)

**2.     Substantial Evidence**

Defendant contends there is no substantial evidence supporting his conviction because there was insufficient evidence of identity. We are not persuaded.

" 'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Johnson* (2015) 60 Cal.4th 966, 988.)

The record contains substantial evidence defendant was one of the men who robbed the Del Taco in July 2004. His accomplice, Mr. Marks, confirmed, through two prior statements to police, that defendant participated in the robbery along with Mr. Barnes, and Mr. Clarke who was the driver of the getaway vehicle. One of the victims, Ms. Covarrubias, confirmed that in September 2004, she positively identified defendant as one of the three men who robbed the restaurant, as did one of the witnesses, Ms. Medrano. The fact that neither of them recognized defendant, 10 years later at the time of trial does not render insubstantial their identifications made near the time of the robbery. The jury was in the best position to determine the weight and credibility of such evidence.

Defendant contends Mr. Marks's prior statements fail to directly and credibly implicate him as one of the robbers, suggesting that Detective Bragole was the one who asserted that defendant went inside the restaurant. Defendant does not fairly characterize Mr. Marks's prior statements. Mr. Marks, and not Detective Bragole, was the first person to mention defendant in the videotaped interview. Mr. Marks told Detective Bragole that

10

Mr. Clarke, Mr. Barnes and he picked up defendant, who had a handgun.  Detective Bragole then told Mr. Marks he knows he is rehashing what he already told Detective Collier, but that he needs to ask his own questions.  After a little more back and forth, the following colloquy occurs:

"[DETECTIVE BRAGOLE]:  Alright.  And then you and [Mr. Barnes] and Athma, how do you pronounce his name?

"[MR. MARKS]:  Athmani.

"[DETECTIVE BRAGOLE]:  Athmani, go inside this [Del Taco] . . . .

"[MR. MARKS]:  Uh huh . . . ."

Mr. Marks then described what the three of them did inside the Del Taco.  His statement is basically the same as his prior statement to Detective Collier.  Despite defendant's suggestion to the contrary, it is clear that Mr. Marks implicated defendant as one of the participants in the robbery in both statements to the two detectives.  His two prior statements and the positive identifications by Ms. Covarrubias and Ms. Medrano constitute substantial evidence on which the jury could conclude defendant was a participant in the robbery.  (*People v. Mohamed* (2011) 201 Cal.App.4th 515, 521-522 [on " 'the question of identity, to entitle the reviewing court to set aside a jury's finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all' "].)

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.



RUBIN, J.


11